IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRAVIS JAMES                                    *
        Plaintiff,
    v.                                       *       CIVIL ACTION NO. RDB-06-2804

MAJOR CARLTON THOMPSON                 *
SGT. HOWARD JOHNSON
WARDEN JAMES SMITH                     *
CAPT. WASHINGTON
        Defendants.               *
                           ***

## MEMORANDUM OPINION

This civil rights action alleges excessive use of force in violation of the Eighth Amendment.

Pending is Defendants' Motion to Dismiss or for Summary Judgment and Plaintiff's Opposition

thereto. Paper Nos. 19 & 21. After review of the Complaint and pleadings, the Court concludes that

an oral hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons set forth

below, Defendants' Motion, construed as a Motion for Summary Judgment, shall be granted.

### Background

Plaintiff alleges that while confined at the Jessup Correctional Institution ("JCI") on

September 22, 2006, a extraction team was formed due to massive flooding on his tier. He claims

that chemical agents were sprayed in his cell, he was handcuffed behind his back, and then escorted

to the lobby, where he was assaulted and beaten by Captain Washington, Major Thompson, Officer

Evans, and Sergeants Burnett and Johnson.[1] (Paper No. 1). He claims that he received injuries to

his face, back, stomach, and legs, and seeks $50,000.00 in damages. (Paper Nos. 1 & 17).

In support of their Motion, Defendants have presented declarations from Defendants

Thompson, Washington, and Johnson and records from Plaintiff's base and medical files. (Paper

No. 19 at Ex. 1). Defendants argue that: (1) the Complaint fails to set out a claim of supervisory

---

[1]    Officer Evans and Sergeant Burnett are not listed as Defendants.

liability on the part of Warden Smith; (2) the Complaint is subject to dismissal for the failure to exhaust administrative remedies;[2] and (3) they are entitled to judgment in their favor under the Eighth Amendment based upon the following information.

On September 22, 2006, Plaintiff's tier was flooded in B-Wing, A-Building in the JCI. Following this incident, Plaintiff and four other inmates were to be extracted from their cells.[3] (Paper No. 19, Ex. 1 at Use of Force Reports).  Plaintiff refused several orders to stop flooding his cell and to permit himself to be handcuffed for removal from the cell.  (*Id*.).  A burst of chemical spray was administered by Defendant Thompson, after which the extraction team entered Plaintiff's cell at approximately 1:45 p.m.  (*Id*.).  Defendants state that Plaintiff was angry, combative, and resisted being cuffed, but was ultimately restrained and placed under control.  (*Id*.).  He was escorted afterward to be examined by medical personnel.  The examination, occurring at 2:30 p.m., revealed injuries of multiple skin irritation and minor edema, mainly on the face and chest.  (Paper No. 19, Ex. 1 at Medical File Record).  In addition, a small laceration of the outer part of the left eye was noted.  The area was cleaned and a pressure dressing was applied.  (*Id*.).  Plaintiff was provided Tylenol.  (*Id*.)  Plaintiff filed a sick-call request three days later and was seen on September 29,

---

[2]    Defendants claim that Plaintiff filed this lawsuit before receiving a reply to a request for administrative remedy he filed about the cell extraction incident.   They assert that he is not entitled to bypass available administrative remedy procedures.   (Paper No. 19).   In response, Plaintiff claims that he filed an administrative remedy with the Warden before he filed this Complaint, but has yet to receive a reply from the Warden.  (Paper No. 21).  He appears to claim that the JCI administration has "prolong[ed] the process" and he filed this lawsuit in October of 2006, because he was being "taunted" by several correctional officers and wanted to seek redress.  (*Id*.).  Plaintiff also asserts that when Warden Smith did not respond to his grievance, he filed a remedy with the Commissioner at Division of Correction Headquarters on November 16, 2006, complaining about Smith's failure to respond. (*Id*.).  He states that as of April, 2007, he has not received a response from either the Warden or Commissioner.  (*Id*.).

[3]    Defendants state that Plaintiff was cited with rule violations with regard to the incidents of September 22, 2006, and pleaded guilty to a Category I Rule violation (engaging in a disturbance) on September 29, 2006.  (Paper No. 19, Ex. 1 at Base File Record).  He was sanctioned with 150 days of disciplinary segregation, cell restriction, and the loss of good conduct time.  (*Id*.).

2006, for his complains of an eye gash, stomach aches, and pain in his side from being kicked.  A physician's assistant noted that the eye injury had healed and that the abdominal area was tender to palpation, but negative for "rebound" pain.  (Paper No. 19, Ex. 1 at Medical File Record).  An x-ray was scheduled to determine if a mass was present.  (*Id.*).  The x-ray, conducted on October 4, 2006, revealed a "nonspecific gas pattern, no abnormal masses or radio opaque calculi."  (*Id.*).

Plaintiff claims that Warden Smith is liable in his capacity as Warden because as the supervisor of Defendants Thompson, Washington, and Johnson, he knew of their prior acts of excessive force.  (Paper No. 21).  Plaintiff's Opposition provides new details regarding the alleged use of force.  He claims that Defendant Thompson "poked" him in the left side of his abdominal area with a riot stick and when he did not fall to the ground, Defendant Thompson "whacked" him in the back of the knee with the riot stick, causing him to fall to the ground in the A-Building lobby.  (*Id.*).  Plaintiff asserts that when he fell to the ground in the fetal position, Defendants Washington and Johnson began to brutally kick and stomp on him in the back and torso.  (*Id.*)  He states that there was no justification for the use of this force and that he immediately sought to complain about his medical injuries, but did not receive a sick-call slip until September 25, 2006, and was not seen until September 29, 2006.  (*Id.*).  Plaintiff maintains that the swelling of his face and chest and laceration to his eye constitute more than a *de minimis* injury.  He claims that he still suffers blurred vision in the left eye and minor pain in the abdominal area due to the incident.  (*Id.*).

### Standard of Review

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *See Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997).  Such a motion ought not to be granted unless "it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The court, however, need not accept unsupported legal conclusions or pleaded facts, or conclusory factual allegations devoid of any reference to particular acts or practices.  *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989)

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-24 (1986)).  "The party opposing a properly supported motion for summary judgment may

not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing

that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840

F.2d 236, 240 (4th Cir. 1988).

### Analysis

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison

conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are

exhausted."[4]  Proper exhaustion of administrative remedies demands compliance with an agency's

deadlines and other critical procedural rules because "no adjudicative system can function

effectively without imposing some orderly structure on the course of its proceedings." *Woodford

v. Ngo*, 126 S.Ct. 2378, 2385-86 (2006).  Exhaustion under § 1997e(a) is not a jurisdictional

requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the

failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by

defendant(s).  *See Jones v. Bock*, 127 S.Ct. 910, 919-22 (2007);  *Anderson v. XYZ Correctional

Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The § 1997e(a) exhaustion requirement is designed so that prisoners pursue administrative

grievances until they receive a final denial of the claims, appealing through all available stages in

the administrative process.  *See Chase v. Peay*, 286 F.Supp.2d 523, 530 (D. Md. 2003); *Booth v.

Churner*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he

---

[4]     The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they
involve general circumstances or particular episodes, and whether they allege excessive force or
some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).   Plaintiff's excessive force claim
against Defendants plainly concerns prison conditions.

"never sought intermediate or full administrative review after prison authority denied relief"). In Maryland, filing a request under the administrative remedy procedure ("ARP") with the Warden of the prison in which one is incarcerated is the first of three steps in the ARP process provided by the Division of Correction to its prisoners. If this request is denied, a prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code, Title 12 § 07.01.03.

Plaintiff states that he filed remedies with the Warden and Commissioner in September and November of 2006. It remains unrefuted that he did not proceed to the IGO to appeal the prior remedy responses (or lack thereof). It therefore appears that this action is subject to dismissal for non-exhaustion under 42 U.S.C. § 1997e(a). The Court's analysis, however, does not end here.

To establish supervisory liability on the part of Warden Smith, Plaintiff must show that: (1) as supervisor, Smith had actual or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) Smith's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between Smith's inaction and the particular constitutional injury suffered by plaintiff. *See Shaw v. Shroud*, 13 F.3d 791, 799 (4th Cir. 1994). Plaintiff has failed to demonstrate such liability on the part of Warden Smith.

Finally, the Court finds that Plaintiff has failed to establish that Defendants Thompson, Washington, and Johnson's alleged actions violate the Eighth Amendment. Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). The court must look at: the need for application of force; the

relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers,* 475 U. S. 312, 321 (1986).  Inherent in the protection afforded by the Eighth Amendment is the principle that not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9-10.  Further, while the prisoner's injury need not be significant to violate the Eighth Amendment, something more than a *de minimis* injury is required in order to prove that excessive force was used. *See Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) (generally, no Eighth Amendment excessive force claim exists where any injury sustained by the plaintiff is *de minimis* and the force is not of a source "repugnant to the conscience of mankind").[5]

The following facts remain unrefuted.  Plaintiff and other inmates on his tier flooded their cells.   An extraction team was called on to remove the inmates.   Plaintiff refused orders to stop flooding his cell and to present his hands for cuffing.   A burst of chemical agent was applied and officers entered the cell.  Plaintiff remained recalcitrant[6] and additional force was applied to restrain him.   At this point, the parties factually disagree as to what transpired.   Defendants state that they did not beat, kick, or assault Plaintiff, nor did they witness any other officer do so.   Plaintiff claims that he was forcibly taken to the ground, where he laid in a fetal position, yet was brutally stomped

---

[5]      When determining whether injuries suffered by an inmate at the hands of prison officers are *de minimis*, a court should consider: (1) the context in which the injuries were sustained, *i.e.,* was there a disturbance which required the use of force; (2) did the inmate seek medical care; (3) were any injuries documented in the medical records generated shortly after the incident; and (4) are the documented injuries consistent with the prisoner's allegations of excessive force or are they more consistent with the application of the amount of force necessary under the circumstances of the particular incident. *See Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998); *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998); *Riley v. Dorton*, 115 F.3d 1159, 1168 (4th Cir. 1997); and *Norman*, 25 F.3d at 1264.

[6]      Defendants state that Plaintiff refused to be cuffed and had to be taken to the ground.   Plaintiff claims that he was forcibly taken to the ground, where he laid in a fetal position.

7

and kicked in the stomach and torso.  The verified medical record presented to this Court, however, does not support Plaintiff's version of events.  Plaintiff suffered a small laceration close to his eye and edema and skin irritation about his face and chest.   Claims of abdominal pain were evaluated and objective findings were negative.   The extent of injuries suffered by Plaintiff are supportive of an incident involving a 276-pound inmate, who flooded his cell, refused to respond to direct orders to cease his actions and to be handcuffed, and had to be physically subdued.     Having found no genuine dispute of material fact justifying a trial on the merits in this case, the Court shall grant Defendants' Motion for Summary Judgment by separate Order.


Date:  <u>May 29, 2007</u>                    /s/_____
                                                          RICHARD D. BENNETT
                                                          UNITED STATES DISTRICT JUDGE